IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

SAMUEL D. MOON,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C14-0075

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . 2

III. FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    A.    *Moon's Education and Employment Background* . . . . . . . . . . . . . . . 4
    B.    *Vocational Expert's Testimony from the Administrative Hearing* . . . . 4
    C.    *Moon's Medical History* . . . . . . . . . . . . . . . . . . . . . . . 6

IV. CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . 11
    A.    *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . 11
    B.    *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . 13
        1.    *Dr. Kappos' Opinions* . . . . . . . . . . . . . . . . . . . . . . . 13
        2.    *Dr. March's Opinions and Severe Mental Impairment* . . . . . 15
        3.    *Fully and Fairly Developed Record* . . . . . . . . . . . . . . . . 18

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VI. ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Samuel D. Moon on June 4, 2014, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits.[1] Moon asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Moon requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*,

---

[1] On August 18, 2014, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

2

674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the decision of the Administrative Law Judge ("ALJ") meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d

1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## III. FACTS

### A. Moon's Education and Employment Background

Moon was born in 1961. He did not graduate from high school, but later earned his GED. While in school, he was enrolled in special education classes. In the past, Moon worked as delivery driver and assistant manager of a convenience store.

### B. Vocational Expert's Testimony from the Administrative Hearing

At the hearing, the ALJ provided vocational expert Gregory S. Jones with a hypothetical for an individual who can:

> lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for six hours in an eight hour work day; they can sit for six hours in an eight hour work day; they can occasionally climb ramps and/or stairs; but they cannot climb ladders, ropes, or scaffolds; they can occasionally balance, stoop, kneel, crouch, and crawl; with the left upper extremity, the non-dominant upper extremity, they can do frequent handling and fingering; with the right dominant upper extremity they can do occasional overhead reaching; they cannot do work requiring hypervigilance or care for the safety of others; and they must avoid concentrated exposure to pulmonary irritants[.]

(Administrative Record at 102-103.) The vocational expert testified that under such limitations, Moon could perform his past work as a general cashier. The ALJ provided the vocational expert with a second hypothetical:

4

> Q: For my second hypothetical, if you were to add to the list of -- or if you were to add to the residual functional capacity described in hypothetical one that the individual would be able to do only unskilled work with spoken instructions as to how to perform that work, would that individual still be able to do the work as a general cashier?
> A: Yes.
> Q: Okay. For my third hypothetical I want you to assume an individual with the same residual functional capacity as described in hypothetical two except this person could lift no more than 10 pounds; and . . . they should be able to alternate sitting and standing at will; could that individual do [Moon's] past work?
> A: No, your honor.

(Administrative Record at 103-104.) Under the third hypothetical, however, the vocational expert testified that Moon could perform the following jobs: (1) charge account clerk, (2) addressing clerk, and (3) table worker. Finally, the ALJ inquired of the vocational expert:

> Q: Okay. . . . [I]f an individual required breaks every two hours lasting minimum 30 to 45 minutes in order to take breathing treatments, would that individual be able to do any of the jobs you've described?
> A: In my opinion, based on my experience, no, your honor.
> Q: Would there be any work for such an individual?
> A: Again, in my opinion, based on my experience, no.

(Administrative Record at 106.)

Moon's attorney also questioned the vocational expert:

> Q: [T]he hypothetical person only -- could rarely sit; rarely stand; rarely walk; never stoop, bend, crawl, kneel, use uneven surfaces, climb ladders; rarely stairs; never use upper extremities for gripping or grasping; I'm assuming that would eliminate all jobs, is that correct.
> A: Yes, in my opinion, based on my experience, yes.

5

| | | |
|---|---|---|
| Q: | | Okay. If the hypothetical person were going to miss more than three days of work a month, would they be competitively employable? |
| A: | | Again, in my opinion, based on my experience, no. |
| Q: | | . . . [I]f the hypothetical person had -- was either off task or worked at a slow pace up to a third of the work day, would they be competitive[ly] employ[able]? |
| A: | | Again, in my opinion based on my experience, no. |

(Administrative Record at 106-107.)

### C. Moon's Medical History

On May 20, 2010, at the request of Disability Determination Services ("DDS"), Moon met with Dr. Kyle P. Christianson, M.D., for a disability examination. Moon's primary complaint was low back pain. According to Moon, he had a 4-5 year history of low back pain, but it was exacerbated when he fell at work. Moon reported that his past treatment included 4-5 injections and physical therapy. Upon examination, Dr. Christianson diagnosed Moon with chronic low back pain, obesity, Type II diabetes, hypertension, and history of a left wrist injury. As for Moon's functional abilities, Dr. Christianson noted that:

> [Moon] states he is able to lift about 5-10 pounds before he has low back pain as well as pain in his abdomen and legs. He estimates ability to sit about 20 minutes before he needs to change positions and does so frequently. He is able to stand an estimated 1/2 hour but needs to change positions frequently primarily because of low back pain and knee pain.

(Administrative Record at 676.)

On July 12, 2010, Dr. Rene Staudacher, D.O., reviewed Moon's medical records and provided DDS with a physical residual functional capacity ("RFC") assessment for Moon. Dr. Staudacher determined that Moon could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks

for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Staudacher also determined that Moon could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Staudacher found no manipulative, visual, communicative, or environmental limitations.

On February 21, 2011, Moon met with Dr. James V. Nepola, complaining of right shoulder pain. Specifically, Moon stated that he has "pain at night and he is unable to sleep, sometimes waking up crying. He complains of pain across his shoulders, numbness in his fingers, and reduced strength."[2] An MRI showed a large full thickness rotator cuff tear. Dr. Nepola recommended surgery as treatment. Moon underwent surgery on June 30, 2011.

On August 10, 2011, at the request of DDS, Moon was referred to Dr. Michael C. March, Ph.D., for a mental status examination. In reviewing Moon's medical history, Dr. March noted that:

> [Moon] has difficulty managing his activities of daily living due to his physical limitations. He stated that he sleeps about two hours at a time due to his problems with pain control, and that his sleep has been problematic for the last six to seven years. He often does not complete tasks that he begins due to the degree to which activity exacerbates his pain. He reported problems with short-term memory, in part due to depression, pain, and sleep problems.
>
> [Moon] has felt anxious "for years[.] . . ." He feels depressed at times. He stated he often has bad dreams. He feels fatigued. He has variable anhedonia. He is irritable at times. . . . His energy is low. . . . He does feel guilty and worthless[.] . . . He does not feel like he has much to offer [] anyone else. . . .

---

[2] Administrative Record at 722.

> [Moon] also explained that he has a long history of learning problems. He explained that he is able to do some simple reading, but typically needs assistance for managing the completion of paperwork such as forms required for various applications. He gets easily bored with cognitive tasks. He stated he typically cannot recall information that he reads if the information is more than one page in length. His memory problems had been prominent for the last two years. He did note that he has always been very distractible. He has always needed reminders and repetition to assist him in completing tasks. He stated that he has always had "poor focus on what is going on." He often feels "like things move too fast for me."

(Administrative Record at 777.) Upon examination, Dr. March diagnosed Moon with depressive disorder with anxious features and possible learning disorder and ADHD. Dr. March concluded that:

> I believe [Moon] would have mild-to-moderate problems with remembering and understanding instructions, procedures, and locations due to his mood, limited concentration, and perhaps his difficulties with learning as well. If he were to rely entirely on written information for instruction, his difficulties might become moderate-to-severe, though I am uncertain about the extent of severity without more detailed assessment. . . . He may have moderate problems with sustaining his attention and concentration and pace of activity. . . . His judgment appears to be fair, though his insight may be somewhat limited. I believe he would experience mild to moderate impairment in coping with change in the work environment.

(Administrative Record at 780.)

On August 31, 2011, at the request of DDS, Moon met with Dr. George T. Kappos, M.D., for a consultative examination. In reviewing Moon's medical history, Dr. Kappos noted that:

> [Moon] has been previously diagnosed with a right rotator cuff tear on MRI exam and recently had surgery on his right

8

> shoulder. He is still in a sling on his right arm at this time. . . .
>
> He reports a history of having been diagnosed with a bone chip in his left wrist about seven years ago[.] . . . He states that it was recommended that he have surgery but he declined surgery[.] . . . He has been given no restrictions because of this but states that he does have decreased grip in the left hand. He lists his pain as a range of 6-10/10 with an average 6/10. He states the pain is aggravated by carrying, squeezing and lifting anything over 8 to 10 pounds. He reports nothing that relieves the pain.
>
> He reports a history of knee pain for the last year. He states he was diagnosed with arthritis[.] . . . He lists this pain as a range 5-9/10 with an average of 5/10. He states that the pain is aggravated by sitting more than 15 minutes, climbing stairs, squatting, walking more than one block and weather changes. It is improved with medications and somewhat with heat.
>
> He reports a history of back pain since an injury at work nine to ten years ago. The pain is in the low and mid lower back. He states that he has been given restrictions of decreased lifting because of this pain. . . . He has had steroid injections, medication and physical therapy without relief. He lists this pain as a range of 5-10/10 with an average of 7/10. The pain is worsened with movement, stairs and walking more than one block and is improved with heat and medication.

(Administrative Record at 798-799.) Moon indicated to Dr. Kappos that he had physician-assigned restrictions on lifting, pushing, pulling, carrying, pinching, gripping and grasping, and using power tools due to his right rotator cuff surgery. Dr. Kappos' impression was that Moon "had recent right shoulder surgery and has limitation of his left wrist from an old injury. He has ongoing problems with neck and back pain which limit his activity."[3] Dr. Kappos limited Moon to: (1) lifting, pushing, pulling, and carrying

---

[3] Administrative Record at 802.

9

no more than 10 pounds occasionally; (2) rare sitting, standing, walking, and climbing stairs; and (3) no traveling due to joint problems.

On March 19, 2012, Moon had a follow-up appointment with Dr. Nepola regarding his rotator cuff surgery. Dr. Nepola noted that Moon "continues to take 2-3 oxycodone per day. He has been working with Physical Therapy, progressing to a home exercise program. He feels like he is still somewhat painful; however, his motion is improving, as well as strength."[4] In late April 2012, Dr. Nepola found that Moon "is still having moderate pain, but is making slow progress with his rehabilitation on his range of motion."[5] In June 2012, Dr. Nepola determined that Moon's rotator cuff repair is "progressing" and cut him back to one oxycodone daily. Dr. Nepola stated that he would "not proscribe any more" pain medication.

On November 1, 2012, Moon met with Dr. Khadija S. Shahid, O.D., for a diabetic eye health examination. Moon reported to Dr. Shahid that his "current glasses are not very helpful. He has trouble seeing in the distance and up close."[6] Moon's base distance vision was 20/100 in his right eye, and 20/125 in his left eye. His near vision was 20/200 in both eyes. Upon examination, Dr. Shahid diagnosed Moon with decreased vision and mild diabetic retinopathy. Dr. Shahid recommended strict control of his diabetes to reduce the risk of diabetic eye disease and possible reading magnification for his glasses. Dr. Shahid offered no prescription, treatment options, or limitations due to his mild diabetic neuropathy.

---

[4] *Id.* at 905.

[5] *Id.* at 917.

[6] Administrative Record at 955.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Moon is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart,* 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id.* The RFC is the most an individual can do despite the combined

11

effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Moon had not engaged in substantial gainful activity since May 12, 2009. At the second step, the ALJ concluded from the medical evidence that Moon had the following severe impairments: diabetes mellitus, hypertension, diabetic retinopathy and vision loss, asthma, right shoulder rotator cuff tear, and degenerative disc disease of the thoracic spine. At the third step, the ALJ found that Moon did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Moon's RFC as follows:

> [Moon] has the residual functional capacity to perform light work[.] . . . Specifically, [Moon] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for six hours out of an eight-hour workday with regular breaks; he can sit for six hours out of an eight-hour workday with regular breaks; and he is unlimited with respect to pushing and/or pulling, other than as indicated for lifting and/or carrying. [Moon] can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but must never climb ladders, ropes, or scaffolds. He can frequently handle and finger with the non-dominant [] left upper extremity and occasionally reach overhead with the dominant right upper extremity. Lastly, [Moon] is precluded from work requiring hypervigilence [*(sic)*] or care and/or safety of others and concentrated exposure to pulmonary irritants.

(Administrative Record at 62.) Also at the fourth step, the ALJ determined that Moon was capable of performing his past relevant work as a general cashier. Therefore, the ALJ concluded that Moon was not disabled.

12

## B. Objections Raised By Claimant

Moon argues that the ALJ erred in three respects. First, Moon argues that the ALJ failed to properly evaluate the opinions of his consultative examining physician, Dr. Kappos.[7] Second, Moon argues that the ALJ erred by failing to find his mental impairment to be a severe impairment, in part because the ALJ failed to properly evaluate the opinions of consultative examining psychologist, Dr. March. Lastly, Moon argues that the ALJ failed to fully and fairly develop the record with regard to his visual impairment.

### 1. Dr. Kappos' Opinions

Moon argues that the ALJ failed to properly evaluate the opinions of his examining physician, Dr. George T. Kappos, M.D. Specifically, Moon argues that the ALJ's reasons for discounting Dr. Kappos' opinions are not supported by substantial evidence in the record. Moon concludes that this matter should be reversed and remanded to allow the ALJ to properly evaluate Dr. Kappos' opinions.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2009) (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'"

---

[7] In his brief, Moon refers to a consultative examination with Dr. John Kuhnlein, but his examination was performed by Dr. Kappos, who works in a group practice with Dr. Kuhnlein. *See* Administrative Record at 798-804 (Moon's consultative examination signed by Dr. Kappos).

13

*Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

The ALJ addressed Dr. Kappos' opinions as follows:

> In determining [Moon's] residual functional capacity, I give little weight to the opinion of Dr. Kuhlein[8] [(*sic*)] who opined [Moon] could lift, push, pull, and carry less than 10 pounds occasionally; rarely sit, stand, and walk due to [Moon's] back problems; never perform postural activities due to [Moon's] knee problems; and never to rarely use his upper and lower extremities. This opinion is without substantial support from any objective clinical or diagnostic findings, which renders this opinion less persuasive. Although Dr. [Kappos] cited knee and back pain for restricting [Moon's] activities, the record showed [Moon] did not receive regular, ongoing treatment for these conditions. In addition, Dr. [Kappos'] opinion is inconsistent with his findings from the physical examination, which were benign[.] . . . Moreover, the opinion expressed is quite conclusory. Dr. [Kappos] failed to provide an explanation for such restrictive residual functional capacity.

(Administrative Record at 66.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Kappos. The Court also finds that the ALJ provided adequate reasoning for granting little weight to Dr. Kappos' opinions. *See Wagner*, 499 F.3d at 848 ("'The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'") (quotation omitted)). Accordingly, even if inconsistent conclusions could

---

[8] Similar to Moon in his brief, the ALJ in his decision, also incorrectly identified Dr. Kuhnlein as Moon's consultative examining doctor. It is clear from the signature on the record that Dr. Kappos performed the consultative examination for Moon. *See* Administrative Record at 798-804 (Moon's consultative examination signed by Dr. Kappos).

14

be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. *Dr. March's Opinions and Severe Mental Impairment*

Moon argues that the ALJ erred in his assessment at step 2 of the sequential analysis by failing to find that he has a severe mental impairment. Moon maintains that the ALJ failed to properly evaluate the opinions of his consultative examining psychologist, Dr. March, who according to Moon, indicated that his depressive disorder is a severe mental impairment. Moon concludes that the ALJ's failure to find a severe impairment at step 2 of the sequential analysis warrants reversal.

"An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citations omitted). In other words, if the impairment would only have a minimal effect on a claimant's ability to work, then it would not constitute a severe impairment. *Id.* (citation omitted). The Eighth Circuit Court of Appeals has stated "[s]everity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard, and we have upheld on numerous occasions the Commissioner's finding that claimant failed to make this showing." *Id.* at 708 (citations omitted).

Additionally, an ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2009) (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether

15

hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

In his decision, the ALJ thoroughly explained his reasoning for determining that Moon's depressive disorder is not a severe mental impairment, including addressing the opinions of Dr. March. The ALJ explained that:

> [Moon's] medically determinable mental impairment of depression does not cause more than minimal limitation in [his] ability to perform basic mental work activities and is therefore nonsevere. . . .
>
> The first functional area is activities of daily living. In this area, [Moon] has mild limitation. [Moon] admitted that he was able to prepare meals, complete household chores, drive, shop, and watch television. (Ex. 17F).
>
> The next functional area is social functioning. In this area, [Moon] has no limitation. [He] reported he managed relationships adequately, including relationships with authority figures (Ex. 17F). Further, the consultative examiner noted that he was cooperative and maintained appropriate eye contact.
>
> The third functional area is concentration, persistence or pace. In this area, [Moon] has mild limitation. [Moon] acknowledged he followed instructions fairly and effectively, although he preferred spoken instructions than written instructions (Ex. 17F). . . .
>
> Because [Moon's] medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration . . . it is nonsevere. In August 2011, Michael March, Ph.D., conducted a complete consultative psychological evaluation of [Moon]. Mental status examination revealed his mood was dysphoric with

> congruent affect. Otherwise, the findings were unremarkable. Based on these findings, Dr. March diagnosed depressive disorder and determined [Moon's] GAF score was 65.
>
> I give little weight to the opinions of Dr. March and the State agency psychological consultants. Dr. March opined [Moon] had limitations in the following areas: remembering and understanding instructions; concentration, persistence, and pace; and changes in a work environment. Based solely on Dr. March's opinion, the State agency psychological consultants opined [Moon] had moderate limitation in the area of concentration, persistence, and pace. Little weight is being given to the opinion of Dr. March because it was based on a one-time examination of [Moon], which revealed a glimpse of [Moon's] general mood and affect. In addition, the objective findings from his examination of [Moon] are inconsistent with his opinion. For instance, Dr. March made no note of impaired concentration or memory, yet he opined [Moon's] concentration, persistence, and pace was impaired. Dr. March's opinion is also inconsistent with the objective medical evidence and the record as a whole, which revealed [Moon] had no history of receiving ongoing mental health treatment since the alleged onset date and his mood was generally noted to be normal by examining physicians (Ex. 18F). Because the State agency psychological consultants relied on Dr. March's assessment in forming their opinion, little weight is also given to the opinion of the State agency psychological consultants.

(Administrative Record at 60-61.) Moreover, Dr. March did not specifically state in his opinion that Moon has a severe mental impairment. Instead, Dr. March indicated that Moon "may" have "mild to moderate" difficulties with memory, concentration, and changes in the work environment.[9]

Therefore, having reviewed the entire record, the Court finds that the ALJ thoroughly considered and properly addressed Moon's mental health history. The ALJ also

---

[9] *See* Administrative Record at 780.

17

properly considered and weighed the opinion evidence provided by Dr. March. The Court further finds that the ALJ provided adequate reasoning for granting little weight to Dr. March's opinions. *See Wagner*, 499 F.3d at 848 ("'The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'") (quotation omitted)). Accordingly, the Court finds that the ALJ's determination at step 2 of the sequential test, that Moon's depressive disorder is not a severe impairment, is supported by substantial evidence. *See Anderson*, 696 F.3d at 793. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. Fully and Fairly Developed Record

Moon argues that the ALJ failed to fully and fairly develop the record with regard to his visual impairment. Specifically, Moon argues that:

> The ALJ's decision is internally inconsistent. By definition, a severe impairment produces significant work-related limitations. The ALJ, however, failed to include any visual limitations.

Moon's Brief (docket number 13) at 21. Moon concludes that "[t]he ALJ's decision should be reversed and this matter remanded so the ALJ may impose appropriate visual limitations."[10]

An ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618; *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930

---

[10] Moon's Brief (docket number 13) at 21.

(8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted). Having reviewed the entire record, the Court concludes that the ALJ fulfilled her duty to fully and fairly develop the record in this case.

In his decision, the ALJ addressed Moon's visual problems as follows:

> [Moon] also sought treatment for vision loss. Examination revealed decreased visual acuity with restrictions on confrontation fields, nerve fiber layer loss, mild intraretinal microvascular abnormalities, a few scattered dot blot hemes throughout four quadrants, and his visual acuity was 20/200 in both eyes, but no prescription was dispensed (Ex. 34F). Instead, he was referred to a neuro-ophthalmologist (Ex. 35F). Ophthalmology examination revealed depressed flicker fusion; good visual field showing bilateral depressed field; and temporal thinning of the left eye and bilateral borderline thinning of both eyes. He was diagnosed with diabetic retinopathy and was advised to control his diabetes. (Ex. 34F; 35F). No other treatment was advised by the ophthalmologist.

(Administrative Record at 63-64.)

Here, the ALJ thoroughly addressed Moon's medical history regarding his visual problems. The ALJ correctly pointed out that no ophthalmologist provided Moon with a prescription for new corrective lenses or treatment for his vision. Moreover, there is no evidence in the record that an ophthalmologist or any other type of doctor opined that Moon has any visual limitations. Therefore, having reviewed the entire record, the Court finds that the ALJ fulfilled his duty to fully and fairly develop the record with regard to Moon's vision. *See Cox*, 495 F.3d at 618. Accordingly, the Court concludes that Moon's arguments on this issue are without merit.

## V. CONCLUSION

The Court finds that the ALJ properly considered and addressed the medical evidence and opinions in the record, including the opinions of Dr. Kappos and Dr. March. The Court also finds that the ALJ's determination at step 2 of the sequential test is supported by substantial evidence. Lastly, the Court determines that the ALJ properly fulfilled his duty to fully and fairly develop the record in this case, including the issue of Moon's vision problems. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 25th day of March, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA